**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

JONATHAN KRASICK,

        Plaintiff,

    vs.                     **Case No. 09-4007-RDR**

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

        Defendant.

---

**MEMORANDUM AND ORDER**

In December 2004, plaintiff filed applications for social security disability income benefits and supplemental security income benefits. These applications alleged a disability onset date of August 17, 2004. On July 17, 2008, a hearing was conducted upon these applications. The administrative law judge (ALJ) considered the evidence and decided on September 24, 2008 that plaintiff was not qualified to receive benefits on either application. This case is now before the court upon plaintiff's motion to review the decision to deny plaintiff's December 2004 applications for benefits.

I.  STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he is "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E). This means proving that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . .

has lasted or can be expected to last for a continuous period of not less than 12 months." § 423(d)(1)(A). But, disability benefits can only be awarded to claimants who can show that they were disabled prior to the last insured date. §§ 423(a)(1)(A) & 423(c).

For supplemental security income claims, a claimant becomes eligible in the first month where he is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004). "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971).

II. THE ALJ'S DECISION (Tr. 14-22).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 15-6). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an

2

impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work. Finally, at the last step of the sequential evaluation process the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In this case, the ALJ decided plaintiff's applications should be denied on the basis of the fourth and fifth steps of the evaluation process. The ALJ decided that plaintiff maintained the residual functional capacity to perform his past relevant work as well as other jobs that existed in significant numbers in the national economy.

The ALJ made the following specific findings in his decision. First, plaintiff meets the insured status requirements for Social Security benefits through December 31, 2007. Second, plaintiff has not engaged in substantial gainful activity since August 17, 2004, the alleged onset date of disability. Third, plaintiff has the following severe impairments: bipolar disorder; a personality disorder, not otherwise specified (NOS), with borderline personality traits; and a history of alcohol abuse, currently reported to be in remission. Fourth, plaintiff does not have an impairment or combination of impairments that meets or medically

equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Fifth, plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels with the following limitations:

> He needs to have limited contact with others and must avoid working as a member of a team.  He is limited to no more than minimal contact with the public.  He is able to follow simple instructions and low end detailed instructions (unskilled instructions and semiskilled instructions).

Sixth, plaintiff is able to perform past relevant work as a house cleaner at night in addition to other work such as:  unskilled laundry worker and equipment cleaner; folding machine operator; and hand packager, final assembler and wire wrapper.

## III.  PLAINTIFF'S ARGUMENTS

### A.  Special technique for evaluation of mental impairments

Plaintiff's first argument is that the ALJ failed to employ the special technique set forth in 20 C.F.R. § 404.1520a and § 416.920a for the evaluation of mental impairments.  The court disagrees with this contention.

The special technique requires ratings in "four broad functional areas . . . :  Activities of daily living; social function; concentration, persistence, or pace; and episodes of decompensation."  §§ 404.1520a(c)(3) and 416.920a(c)(3).  The ALJ made ratings in these areas in his opinion:

> Based on the overall record, the Administrative Law Judge concludes that the claimant has experienced no more than mild restrictions in activities of daily living, moderate

4

difficulties in maintaining social functioning, and
moderate difficulties in maintaining concentration,
persistence or pace. The claimant has not had any
repeated episodes of decompensation of extended duration
during the relevant period for this decision.

(Tr. 18). So, the ALJ did apply the special technique as far as

rating the degree of limitation. The regulations further require:

The decision must show the significant history, including
examination and laboratory findings and the functional
limitations that were considered in reaching a conclusion
about the severity of the mental impairment(s). The
decision must include a specific finding as to the degree
of limitation in each of the functional areas described
in paragraph(c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2). The court believes this

discussion was included in the ALJ's decision. For instance, the

ALJ discussed plaintiff's history of mental health treatment and

made reference to the reports of State agency psychologists and

psychiatrists. (Tr. 20-21). In addition, the ALJ made findings

with regard to the functional limitations plaintiff had in making

contact with the public and following instructions. While

plaintiff criticizes the ALJ for not discussing how the evidence

supported his conclusions, plaintiff fails to identify probative

evidence which the ALJ disregarded. We find that the ALJ's

decision adequately explains his reasoning.

Finally, plaintiff asserts that the ALJ did not identify the

particular listings he considered at step three of the analytical

process. This is incorrect. The ALJ specifically held that

plaintiff's "mental impairments, considered singly and in

combination, do not meet or medically equal the criteria of listings 12.04, 12.08, or 12.09." (Tr. 17). The ALJ noted that, in reaching his decision, he considered the four functional areas mentioned above and the opinions from treating sources and reviewing psychiatrists and psychologists in making his opinion.

B. <u>Treating doctor</u>

Plaintiff alleges that the ALJ failed to give sufficient weight to the opinion of plaintiff's treating doctor, Dr. Joseph Douglas. The "opinion" at issue consists of eights words written on a form on December 17, 2004: "Stop employment attempts until condition can be stabilized." (Tr. 404). Dr. Douglas also answered "No" to the question: "Is the condition stabilized so that this person can participate in an employment or training program?" (Tr. 404). Plaintiff contends that the ALJ "ignored" Dr. Douglas' opinion and failed to follow the law and consider the following factors in determining what weight to give to the doctor's opinion:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

See <u>Goatcher v. U.S. Dept. of Health & Human Services</u>, 52 F.3d 288,

289-90 (10th Cir. 1995).

The ALJ made the following remark regarding Dr. Douglas'
opinion: "The undersigned has considered this opinion and finds
that it is not well supported by medically acceptable clinical and
laboratory diagnostic techniques for 12 continuous months and is
also inconsistent with other substantial evidence in the record."
(Tr. 19). The ALJ followed this comment with a lengthy review of
the treatment records mainly from September 2005 forward. The
great majority of these records stated that plaintiff's mood was
"calm" "stable" and "pleasant" (see Tr. 397-419), with the
exception of visits to Dr. Douglas in April and May 2006. (Tr.
410, 411, 419). The ALJ remarked that the "contemporaneous
outpatient treatment records" were "inconsistent with disability"
because "these records reflect fairly stable mental functioning
during the bulk of the time frame that the claimant alleges total
disability." (Tr. 21). The ALJ also noted that State agency
psychologist's and psychiatrist's opinions in the record were
inconsistent with mental disability. (Tr. 21).

Dr. Douglas' statement is brief. So is the response to the
statement by the ALJ. Nevertheless, the court believes the record
adequately supports the conclusion that the ALJ expressly
considered four of the six factors mentioned in the Goatcher
decision. The ALJ's lengthy review of the treatment records
demonstrates that he considered the length of the treatment

7

relationship and the frequency of examination, as well as the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed.  The ALJ also clearly found that to the extent Dr. Douglas was stating that plaintiff was not sufficiently "stable" to work in December 2004, substantial evidence did not support a finding that this instability persisted for a period of 12 months. Thus, the ALJ considered the degree of support by relevant evidence and consistency between the opinion and the record as a whole.  The ALJ did not expressly address the question of whether Dr. Douglas was a specialist, but it is clear that the ALJ carefully considered the doctor's records and the kind of treatment Dr. Douglas provided.  As noted in the ALJ's decision, Dr. Douglas provided outpatient treatment and prescribed and adjusted various medications to help stabilize plaintiff's condition.  The ALJ also considered "other factors" which supported or contradicted the claim of disability.  For instance, he noted that plaintiff took college classes; that plaintiff dropped out because of poor grades; and that plaintiff did volunteer work at a senior center.

In sum, the court concludes that the ALJ reasonably considered and adequately discussed Dr. Douglas' opinion.

In a reply brief, plaintiff asserts that the ALJ should have specified what weight he gave to Dr. Douglas' opinion, if not controlling weight.  The ALJ's decision is not vague or unclear.

He agrees with the diagnosis from Dr. Douglas. The ALJ does not specifically disagree with Dr. Douglas that defendant may have been unstable on December 17, 2004. But, the ALJ finds the evidence demonstrates that defendant was not too unstable or otherwise mentally impaired to perform employment for a continuous 12-month period. Dr. Douglas' statement is not explicitly contrary to this conclusion.

Under these circumstances, it is not critical to understanding the ALJ's decision that the ALJ characterize the relative weight given to Dr. Douglas' statement. The Dr. Douglas' opinion, by itself, does not support a finding a disability from employment over a 12-month period. What is important is that the ALJ give "good reasons" for the weight assigned to the opinion and that his position be sufficiently "clear to any subsequent reviewers" regarding the weight assigned to the opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). The ALJ has explained his treatment of Dr. Douglas' opinion with sufficient clarity for the court to understand and review his decision.

C. Plaintiff's credibility

Plaintiff contends that the ALJ did not adequately assess plaintiff's credibility. The ALJ summarized plaintiff's testimony and the ALJ's conclusions as to credibility as follows:

> The claimant essentially alleges that he is unable to sustain competitive employment due to mental dysfunction which has given him trouble in terms of his ability to complete tasks and concentrate. He also testified that

9

he is unable to work because he is not able to get along with co-workers. He described a history of suicide attempts but no such attempts since his alleged onset date of disability. He did describe suicidal thoughts since his alleged onset date of disability and testified that he had a plan which included overdosing. He described paranoid thoughts of people out to get him and a history of auditory and visual hallucinations, the last occurring some two years prior to his hearing. He described memory problems as well as rapid cycling of his bipolar symptoms. He testified that when he is depressed he stays at home and isolates himself and will not answer the phone, and when he is manic he spends money and bounces checks. He also described some obsessive/ compulsive behavior and panic attacks. He testified that he last used alcohol in April 2003 at which time he stopped, and he testified that he has been attending Alcoholics Anonymous. He also testified that he has experienced some side effects of medications including high blood pressure and high cholesterol.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

The Administrative Law Judge initially notes that the claimant has a rather poor work history and although he has put in some work in most years since 1985, there are many years where he had very little in the way of earnings and in most years he did not earn substantial gainful activity level wages. The claimant's poor work record does not bolster his credibility.

(Tr. 19).

Plaintiff's specific criticism of the ALJ's credibility analysis is that the ALJ improperly considered plaintiff's work history. Plaintiff asserts that his work history actually bolsters his credibility because he was fired from his last job because he

was unable to perform his duties within the allotted time and because he was argumentative.  Plaintiff also contends that his difficulty holding a job over many years is supportive of his claims and testimony in this case.

The ALJ did not broadly reject plaintiff's credibility.  He merely said that plaintiff's claims and testimony are rejected to the extent that they differ from the ALJ's RFC assessment.  This assessment recognized that plaintiff:  must avoid working as a member of a team; have no more than minimal contact with the public; and be limited to simple and low-end detailed instructions.

The Tenth Circuit has often said that "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence."  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted).  A poor work history may diminish a claimant's credibility.  Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002); Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993).  We do not find that the ALJ's credibility analysis is grounds to reverse his decision in this case.

    D.  Plaintiff's RFC

Next plaintiff contends that the ALJ improperly assessed plaintiff's RFC.  Plaintiff contends that the ALJ did not adequately link his RFC findings to specific evidence in the record or explain why plaintiff's alleged limitations are inconsistent

with the record.  Plaintiff asserts that there is no function-by-function assessment of the mental and physical demands of potential jobs and no assessment of the four broad areas of mental functioning.  He also claims that the ALJ improperly ignored the work activities questionnaire from plaintiff's supervisor at his last job at the Hampton Inn.

To reiterate, the ALJ did make findings regarding the four broad categories of mental functioning.  He found mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and no repeated episodes of decompensation of extended duration.  (Tr. 18).  The ALJ said he reviewed the outpatient treatment records of Dr. Douglas "with particular scrutiny" (Tr. 17) as well as the reviewing psychiatrist and psychologist opinions.  (Tr. 18).  He concluded that "the reviewing psychologist opinions in Exhibit 5F are most reliably reflective of the overall evidence and especially consistent with the credible functional limitations established in the evidence.  The Administrative Law Judge finds the rationale at page 13 of Exhibit 5F to be persuasive."  (Tr. 18).

Page 13 of Exhibit 5F contains the March 31, 2005 comments of Dr. Carol Adams, who performed a psychiatric review technique:

> The claimant is a 40-year-old man who is making an initial concurrent DIB application with an AOD/EOD of 8/17/2004. He alleges having bipolar disorder, OCD, and paranoia.  He completed high school in regular classes

12

and has held a number of jobs. He last worked as a janitor in a hotel making SGA until 8/2004. An employer report from Hampton Inn indicates he worked there for a year as a porter/houseman. He moved a bit slowly at times and was a bit unwilling to handle changes to his general routine. However, he could understand and follow instructions, had some difficulty concentrating, and could get quite snappy with other people. He had lower production of tasks in the required amount of time. He was terminated due to not being able to do all the requirements and duties within the allotted time frame and was argumentative at times.

The claimant completed the ADL Form independently. He takes care of his hygiene and medication with some reminders, cooks simple meals, does household chores, drives, uses public transportation, walks and goes out alone, shops and can pay his own bills with money orders. He does report anxiety being around others. He enjoys reading, using the internet, and watching sports. He also goes to the library and to Bert Nash [Community Mental Health Center]. He denies spending time with others and reports difficulty with others when his symptoms are high. He reports having difficulty following instructions and struggles to maintain relationships with authority figures. On the DA&A, he reports last using alcohol and drugs on 4/10/2003. He denies ever losing a job due to substance abuse or having been in treatment. A friend completed a third party report that is consistent.

Medical records from LMH indicate that the claimant's psychiatric hospitalizations have involved the claimant drinking alcohol and stopping his medication (1/19/2003 to 1/24/2003, and 4/9/2003 to 4/12/2003). Medical records from Bert Nash MHC indicate a diagnosis of Mood Disorder NOS on 1/30/2004 and then BAD on 3/29/2004. By 5/18/2004 he was doing well and was doing well with his job on 7/20/2004. On 10/1/2004 he reported being fired due to possible conflict with his supervisor but his mood was stable. On 12/10/2004 he had stopped looking for a job. He continues to function reasonably well as of 1/7/2005 although he reports that his moods are somewhat up and down.

The claimant's allegations are partially credible. He does carry a diagnosis of BAD and is receiving treatment. He does not appear to be drinking and his mood and

functioning are pretty stable at this time. The employer report indicates a bit of difficulty on the job interacting with others and being a bit slow at performing job duties. However, he did work there for a year. Currently, he presents with mild impairment in his ADLs and moderate impairment in his social functioning and concentration, persistence, and pace. His impairments are severe but do not meet or equal a listing. Please see MRFC.

(Tr. 310).

Dr. Adams also completed a Mental RFC Assessment form which showed no significant limitations in 16 of 20 categories and moderate limitations in the following four categories: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to interact appropriately with the general public; and the ability to respond appropriately to changes in the work setting. Dr. Adams commented on this form, also on March 31, 2005:

> The claimant is a 40-year-old man who is making an initial concurrent DIB application with an AOD/EOD of 8/17/2004. He alleges having bipolar disorder, OCD, and paranoia. He is being treated for BAD at Bert Nash MHC and has a history of alcohol abuse but none currently. Medical records and the claimant's own report indicate that his functioning and mood are reasonably stable at this time. His ADLs are only mildly impaired. Socially, the claimant reports some difficulty maintaining relationships with authority figures and his employer report indicates that he could get snappy at times. He should be limited in his ability to work with the public but is capable of interacting appropriately with co-workers and supervisors. He reports no difficulty with attention or concentration, spends time reading, drives, and can manage his own finances. His employer did note some difficulty with concentration but this does not seem to have been significant. He is capable of performing simple and some intermediate level tasks but would probably have difficulty performing more complex tasks on

14

a consistent basis. He is also noted to have some
difficulty adjusting to changes in his routine.

The claimant's mood and functioning are reasonably stable
at this time and there is no evidence of ongoing
substance abuse. He is capable of performing simple,
routine tasks with minimal interaction with the public.

(Tr. 314).

The ALJ's RFC findings are linked to and supported by the
findings and comments of Dr. Adams in her Psychiatric Review
Technique and Mental RFC Assessment forms. As discussed earlier,
any contrary evidence from Dr. Douglas is limited to a curt remark
which relates to plaintiff's mental stability in December 2004 as
opposed to his mental RFC. The other evidence from reviewing
doctors is supportive of the ALJ's conclusions. Thus, there was
little evidence in the record for the ALJ to discuss, distinguish
or analyze. For these reasons, we reject plaintiff's argument that
the ALJ did not adequately discuss or link his RFC findings to the
evidence in the record. See Howard v. Barnhart, 379 F.3d 945, 947
(10th Cir. 2004) (lack of analysis supporting RFC determination is
excused by discussion of relevant medical evidence in some detail
and absence of conflicting evidence).

Finally, the court does not believe the ALJ's failure to
discuss the work activities questionnaire from the Hampton Inn
requires reversal. The questionnaire indicated that plaintiff was
unwilling to handle changes in routine; that plaintiff moved slowly
and became distracted; that he could be snappy and argumentative;

and that he was unable to perform his duties of cleaning and maintaining public areas of the hotel within the allotted time. The ALJ is not required to discuss every piece of evidence; just consider all the evidence. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ referred to the questionnaire during plaintiff's testimony. (Tr. 437-38). The questionnaire was also referred to in Dr. Adams' comments which the ALJ said he considered persuasive. In addition, the content of the questionnaire was basically the same as plaintiff's testimony on the subject to the ALJ. (Tr. 424). Therefore, the record demonstrates that the ALJ considered the evidence of defendant's job experience at the Hampton Inn or evidence which was substantially the same.

E. Capability of performing past work

Plaintiff contends that substantial evidence does not support the ALJ's finding that plaintiff is capable of doing his past work.

The ALJ asked a vocational expert the following questions during the administrative hearing in this matter:

Q. Now if I have a claimant who is the age, the education, past relevant work that you've just identified. This person has no exertional limits. This person needs to have a job with limited contact with others; not work as a member of a team; minimal contact with the public. This person can follow simple, low-end, detailed instructions which would be the same as unskilled and semi-skilled. Could that person do any of the past work?
A. The past work would include the housecleaner. There are night cleaners. Wal-Mart has night cleaners, hotel has night cleaners.
Q. So, what percent of the housecleaner jobs?
A. Well, if we even wanted to reduce it to 75%,do you

16

want me to give your numbers?
            Q.  Yes.
            . . . .
            A.  Say, 1,350 in the State of Kansas.
            Q.  In the U.S.?
            A.  I'm doing my math, 185,000.
            Q.  Now are those numbers already reduced?
            A.  Yes.

(Tr. 444-45).  The vocational expert also testified that plaintiff

could perform jobs as a laundry worker, equipment cleaner, folding

machine operator, hand packager and final assembler.  (Tr. 445-46).

     Plaintiff's attorney asked the vocational expert if

competitive employment would be available for a claimant who, in

addition to the other limitations, requires special supervision for

even routine work and was unable to respond appropriately to

changes in a work setting.  (Tr. 448-49).  The expert responded

that the requirement of special supervision would preclude

competitive employment.  (Tr. 449).

     Plaintiff contends that substantial evidence does not support

the ALJ's finding that plaintiff could perform his past work

because the ALJ did not make the required findings concerning the

mental and physical demands of that work.  Plaintiff's argument is

based on Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996)

where the court noted that there were three phases of evaluation an

ALJ must perform as part of step four of the sequential analysis:

        In the first phase, the ALJ must evaluate a claimant's
        physical and mental residual functional capacity (RFC),
        and in the second phase, he must determine the physical
        and mental demands of the claimant's past relevant work.
        In the final phase, the ALJ determines whether the

claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

While an ALJ must make these findings, it is not improper for an ALJ to quote or rely upon a vocational expert's testimony in support of his findings. Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003).

In the administrative hearing in this matter, the ALJ asked the vocational expert to classify plaintiff's past relevant work. The vocational expert testified that the job of housecleaner would be heavy, unskilled labor. (Tr. 444). The ALJ appeared to rely upon this testimony to make the finding that plaintiff's past work at the Hampton Inn was heavy, unskilled labor, and the further finding that plaintiff could return to such work. This may have been too great of a shortcut, particularly since the ALJ did not make findings regarding the specific mental demands of plaintiff's past relevant work. Winfrey, 92 F.3d at 1024. However, this possible error does not require reversal because the ALJ did make findings at step five of the sequential analysis which support the conclusion that plaintiff is not disabled from other substantial gainful employment.

Finally, the vocational expert's responses to plaintiff's attorney's questions do not support reversal either. The ALJ did not make a finding that special supervision was required for plaintiff's employment. The record does not require such a finding

18

in the court's opinion.

IV.   CONCLUSION

The court is convinced that the decision to deny benefits in this case is supported by substantial evidence and an appropriate legal analysis.  Therefore, the court affirms defendant's decision to deny plaintiff's applications for disability income benefits and supplemental security income benefits.

**IT IS SO ORDERED.**

Dated this 26th day of March, 2010 at Topeka, Kansas.


                              s/Richard D. Rogers
                              United States District Judge